UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 09-20264-CR-KING/BANDSTRA

UNITED STATES OF AMERICA,

    Plaintiff,
v.

ERIC TAYLOR,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CASE came before the Court on Defendant's [ERIC TAYLOR's] Motion to Suppress [Evidence] (D.E. 129) filed on August 17, 2009. On August 19, 2009, this motion was referred to the undersigned for appropriate proceedings by the Honorable James Lawrence King pursuant to 28 U.S.C. § 636(b). Accordingly, the undersigned conducted a hearing on this motion on September 9, 2009. Following full review of the pleadings, applicable law, and evidence presented by the parties, and in consideration of oral argument of counsel, the undersigned recommends that Defendant's Motion to Suppress be DENIED.

## PROCEDURAL HISTORY[1]

The government proffers that this motion arises in the context of a long term investigation of a drug trafficking organization (DTO) known as the 68th Street Boys, in the Little Haiti area of Miami. On November 18, 2008, the government obtained a Title III wire tap order for target Junior Sylvin's telephone which resulted in wire interceptions establishing that Sylvin was the leader of the DTO which was distributing cocaine in the

---

[1] This procedural history is contained in the Government's Response to Defendant's Motion to Suppress (D.E. 156) which is presented here solely to explain relevant matters leading up to the filing of defendant's motion. Most of the facts in this summary are contained in the Affidavit submitted in support of the search warrant which is the subject of this motion.

South Florida area. Defendant, ERIC TAYLOR, was not a known participant of the DTO prior to the wire tap.

On November 19, 2008, an interception of Sylvin's telephone indicated that ERIC TAYLOR (hereinafter "defendant") was involved in the DTO as a distributor of drugs for Sylvin. In this call, defendant complained to Sylvin about the amount of money Sylvin gave to defendant for a particular drug sale.

On November 21, 2008, Sylvin was intercepted talking to "Donny" who wanted to purchase cocaine from Sylvin to sell to a third party. Sylvin told "Donny" to go to a blue house on a particular street and then get the drugs from "Nigga E" which the investigators took to mean defendant who lived in a blue house in the particular street.

On March 20, 2009, law enforcement officers directed a confidential source to purchase drugs at the residence. The confidential source went there and met two persons on the front porch of the house where a quick purchase of marijuana took place. The confidential source then asked to purchase cocaine and produced money which was then passed through an open window accessible from the front porch in exchange for a small amount of crack cocaine passed back through the window.

On April 2, 2009, the agents obtained a search warrant for the subject residence, identified as "8000 N.W. 10th Avenue, Miami, Florida." An attachment to the application described this location as a "single story multi-unit residence" with the letter "A" on the front door. The search warrant was executed on or about that same date at which time it was determined that the open window through which cocaine was purchased on March 20 was actually a window of another residential unit (Unit B) of the residence.

On April 6, 2009, defendant and others were arrested and charged with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).

On August 17, 2009, defendant filed the instant motion to suppress evidence arguing a violation of his Fourth Amendment rights in that the search warrant lacked

probable cause to establish that narcotics activity was taking place from Unit A of the subject residence. Defendant notes, *inter alia*, that the narcotics purchased by the confidential source on March 20 were actually obtained from a window of another unit of the subject residence. Defendant argues that the agents knew or should have known this when applying for the search warrant for Unit A so that the affidavit supporting the search warrant was either knowingly false or recklessly prepared by the investigating agents.

## FACTUAL FINDINGS[2]

Detective Freddy Quintero was one of the several law enforcement officers involved in this investigation. Detective Quintero testified that he and other officers conducted numerous surveillances at the subject residence prior to its search on or about April 2, 2009. Detective Quintero did not personally know that the residence contained more than one unit although he acknowledges that the residence is described in the affidavit as a "multi-unit structure." Detective Quintero was aware of a porch and side entrance to this small house but he thought that it was merely a second entrance to the residence. Detective Quintero was also aware of a "pole camera" installed by law enforcement officers at the rear of the residence but he was never shown and had no knowledge of any recordings from that camera.

Detective Quintero frequently observed "drug activities" outside the residence by persons other than defendant. Detective Quintero did not know who lived in the residence prior to the search. Detective Quintero was involved in the drug purchase by the confidential source on March 20; and he observed the events that occurred during that

---

[2]Although defendant's motion challenges the finding of probable cause from the search warrant affidavit itself, defendant was permitted to call one of the investigating agents, Detective Freddy Quintero of the Miami Police Department, concerning the facts and circumstances of the search in light of the government's alternative argument that any error in the affidavit was neither knowingly false nor recklessly included so that the good faith exception under the *United States v. Leon*, 468 U.S. 97 (1984) would apply in this instance.

transaction as reported in the affidavit. Detective Quintero saw money and crack cocaine being passed through a front window near the front porch of the house.

Detective Quintero provided information to DEA Agent Scott Rosenthal, the affiant to the search warrant affidavit. Detective Quintero believed that both front windows were attached to Unit A from his surveillances from the front of the house. Detective Quintero and the other law enforcement agents could not conduct surveillance from the side of the house without jeopardizing their investigation. Detective Quintero knew of no prior search of "Unit B" of the residence before the search of Unit A.

## ANALYSIS

Defendant moves to suppress all evidence seized from Unit A of the residence on the ground that his Fourth Amendment rights were violated in obtaining the search warrant. Specifically, defendant argues that the search warrant described the premises to be searched as "Unit A" of this small house; and that the affidavit lacked probable cause for the issuance of that particular area of the residence. Defendant argues, in particular, the inclusion in the affidavit of the incident on March 20 when cocaine and money were passed through a window accessible from the front porch thereby inferring that drugs were accessed from Unit A when, in fact, that window was part of Unit B, a separate residence inside the house. Defendant then argues that the remaining facts set forth in the affidavit, including the two telephone calls on November 19 and 21, 2008, were insufficient to establish probable cause to believe that evidence of drug activity was to be found in Unit A at the time of the search several months later.

The government opposes suppression on three grounds. First, the government contends that there was probable cause to search Unit A irrespective of the drug transaction through the window of Unit B. Second, the government argues that the inclusion of this erroneous information in the affidavit was a simple mistake, not made knowingly or in reckless disregard for the truth, which was unnecessary to a finding of

4

probable cause to support the warrant. Third, the government argues that the search warrant was prepared and executed in good faith by the law enforcement officers without any attempt to mislead the issuing judge so that the "good faith exception" to the warrant requirement applies under *Leon v. United States*.

Reviewing relevant law, the court begins by recognizing that the warrant clause of the Fourth Amendment prohibits the issuance of any warrant except one "particularly describing the place to be searched and . . . things to be seized." *Maryland v. Garrison*, 48 U.S. 79, 84 (1987). The scope of a lawful search is "defined by the object of the search and the places in which there is probable cause believed that it may be found . . ." *id.* (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)). Probable cause in this context is defined as "facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (quoting *United States v. Howe*, 848 F.2d 137, 140 (9th Cir. 1988)). Thus, the affidavit must contain "sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched." *Id.* (quoting *United States v. Pigrum*, 922 F.2d 249, 253 (5th Cir. 1991)).

Reviewing the affidavit at issue here, the undersigned finds no error in the finding of probable cause by the issuing Magistrate Judge. While defendant focuses on the drug transaction on March 20, 2009, and the apparent transfer of drugs and money through a window of a second unit, Unit B, rather than Unit A, the undersigned finds sufficient factual support for the probable cause determination even without that incident. Specifically, the affidavit of the veteran DEA Agent, Scott Rosenthal, advised the Magistrate Judge of the subject drug trafficking investigation and his familiarity with controlled substances often being stored in drug distributor's homes. Affidavit ¶ 2, 3, 4(h). The affiant further advised of wire tap interceptions of Junior Sylvin in late 2008 indicating that Sylvin was the leader of this DTO and that defendant, ERIC TAYLOR, was an associate of Sylvin who

maintained a drug distribution operation at the subject residence. Affidavit ¶ 5. A public records query of the residence indicated that defendant was associated with this location.[3] Affidavit ¶ 6. In addition, on numerous occasions during the wire intercept, Sylvin would call a landline telephone number there and ask to speak to "E." A female would answer and request "Eric" to come to the phone. Affidavit ¶ 6. Defendant was observed by law enforcement officers entering and exiting the residence and standing in front of it as recently as April 1, 2009. Moreover, law enforcement officers had witnessed multiple hand-to-hand drug transactions in the rear yard and surrounding areas. Affidavit ¶ 6. Thus, the residence was believed to be a location involved in drug trafficking activity by late 2008 – some months before the search warrant affidavit was obtained on April 2, 2009.

Further facts corroborated that reasonable belief. On November 19, 2008, defendant complained to Sylvin by telephone that he was short changed by Sylvin in connection with a recent drug sale. Affidavit ¶ 7. While defendant's location was not stated, this call corroborated defendant's working for Sylvin as a drug distributor at that time. Then, on November 21, 2008, Sylvin was intercepted talking to "Donny" who wanted to purchase a small quantity of drugs to sell to a third party. Affidavit ¶ 8. Sylvin instructed "Donny" to go down the street and get from "Nigga E" at the blue house. *Id.* The residence was a blue color at that time and "Nigga E" was reasonably believed to be defendant, an African-American male whose first name started with the letter E.

On March 20, 2009, a confidential source was directed by law enforcement officers to purchase drugs at the residence. Affidavit ¶ 9. The confidential source went there and purchased marijuana on the front porch directly in front of the door marked with "Unit A". *Id.* The confidential source then asked about cocaine and was advised that only crack cocaine was available at the time. The confidential source provided money to an unknown

---

[3] The affidavit explains that "the residence" is meant to refer to 8000 N.W. 10th Avenue, Unit A, Miami, Florida. The undersigned uses this same term to refer to the subject location.

seller who then handed it through an open window directly to the right side of the entrance door to "Unit A". Crack cocaine was handed back from the same window. *Id.* Only after the search on April 2 was it determined that this window was part of Unit B.

On these facts, and even without the March 20 drug transaction, the undersigned finds sufficient information to sustain the Magistrate Judge's findings of probable cause for the search of Unit A. The Supreme Court has repeatedly advised that "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). In other words, "only the probability, and not a *prima facie* showing of criminal activity is the standard of probable cause." *Id.* at 235 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Federal courts recognize that search warrant affidavits "are normally drafted by non-lawyers in the midst of haste of a criminal investigation . . . [so that] . . . [t]echnical requirements of elaborate specificity . . . have no proper place in this area." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1985). For these reasons, "after-that-fact scrutiny by courts of the sufficiency of a [search warrant] affidavit should not take the form of *de novo* review. A Magistrate's determination of probable cause should be paid great deference by reviewing courts" . . . and . . . "courts should not invalidate . . . [a search warrant] by interpreting the affidavit in a hyper-technical rather than common sense manner." *Id.* at 236 (quoting *Spinelli* at 419; *Ventresca* at 109).

Here, the search warrant affidavit advised the issuing Magistrate Judge of facts sufficient to conclude that defendant lived at or maintained a residence at the subject location based on a public records query; and telephone calls by Sylvin to a landline of the residence were answered by a female who brought "Eric" to the phone. The investigation of this DTO had established that Sylvin was the leader of this drug dealing organization,

and that defendant was an associate of Sylvin who distributed drugs at this location. Defendant had been seen exiting and entering the residence and/or standing in front of it as recently as April 1, 2009.[4] Surveillance officers had witnessed multiple hand-to-hand drug transactions behind and near the residence. Intercepted calls on November 19 and 21, 2008, supported a finding that defendant was distributing drugs for Sylvin from the residence which was confirmed by a controlled drug purchase by a confidential source on the front porch of Unit A on March 20, 2009.

Defendant would have the Court overlook all of the above and invalidate the search warrant due to the subsequent search which revealed for the first time that the window involved in the March 20 drug purchase was part of Unit B. Defendant argues, with no real factual support, that the affiant or other law enforcement officers knew or should have known that this window was not part of Unit A so that the inclusion of this information in the affidavit was knowingly false and/or in reckless disregard of the truth thereby violating his Fourth Amendment rights. The undersigned disagrees. The inclusion of the open window incident on March 20 was merely a report of what was seen on that date. The affiant did not know or have any reason to know that this window was not part of Unit A and the window itself was just to the right of the front door to Unit A so that it reasonably appeared to be part of that unit. While this small house had a second side entrance with its own overhead awning, this side entrance was toward the rear of the house and suggested a rear unit behind Unit A, if it suggested anything at all. Neither the law enforcement officers nor the confidential source ever entered the residence so they had no knowledge of the separate residence under the same roof, which had a front window accessible from the front porch. Thus, the undersigned concludes that the inclusion of the drug sale through this front window, while reported to be a window of Unit A, was neither knowingly false nor

---

[4] This and the March 20 drug deal from the front porch of the residence defeat any idea that the information contained in the affidavit was not recent enough to support a finding of probable cause at the time of the issuance.

8

recklessly included in the search warrant affidavit so that this information, even if used by the issuing judge to find probable cause, did not violate his Fourth Amendment rights. Moreover, the undersigned finds that this search warrant was obtained and executed in a good faith belief that the window was part of Unit A so that any reliance on it by the law enforcement officer would not invalidate the warrant under the good faith exception of the *United States v. Leon*, 468 U.S. 922.[5]

## SUMMARY

For all the foregoing reasons the undersigned finds that defendant's Fourth Amendment rights were not violated by the application for, issuance and execution of the subject search warrant so that the undersigned recommends that Defendant's Motion to Suppress be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable James Lawrence King, United States District Judge, within ten (10) days of receipt. *See* 28 U.S.C. § 636(b)(1)(c); *United States v. Warren*, 687 F.2d 347 (11th Cir. 1982); *cert. denied*, 460 U.S. 1087 (1983); *Hardin v. Wainwright*, 678 F.2d 589 (5th Cir. Unit B 1982); *see also Thomas v. Arn.*, 474 U.S. 140 (1985), reh. denied, 474 U.S. 1111 (1986).

**RESPECTFULLY SUBMITTED** this 30 day of September, 2009 in Miami, Florida.

                                                     Ted E. Bandstra
                                       United States Magistrate Judge

Copies furnished to:
Honorable James Lawrence King
All counsel of record

---

[5] The *Leon* good faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objective reasonable belief in the existence of probable cause." *Leon*, 468 U.S. 926.